FILED

2016 Sep-30  PM 03:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| LISA HOWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 4:15-cv-00217-SGC |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| COMMISSIONER, | ) | |
| | ) | |
| Defendant. | | |

## MEMORANDUM OPINION

The plaintiff, Lisa Howard, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability insurance benefits ("DIB").  Ms. Howard timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  Also pending is Ms. Howard's Motion to Deem Prior Claim as Reopened.  (Doc. 13).  The parties have unanimously consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  (Doc. 21).  For the reasons that follow, Ms. Howard's Motion to Deem Prior Claim as Reopened will be denied, and the decision of the Commissioner will be affirmed.

## I.    FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

This appeal concerns Ms. Howard's second application for disability benefits.  Ms. Howard filed an earlier application for disability benefits on October 28, 2008, alleging a disability onset date of July 1, 2005.  (Tr. at 232).  The Administrative Law Judge ("ALJ") denied Ms. Howard's first application on November 23, 2010, and the Appeals Council denied her request for review.  (Tr. at 242; *see also* Tr. at 103).  Ms. Howard appealed the Commissioner's prior denial in this district, and the district judge assigned to Ms. Howard's first appeal affirmed the Commissioner's decision.  (Tr. at 258-65); *see Howard v. Astrue*, 12-cv-889-CLS, 2013 WL 245617 (N.D. Ala. Jan. 23, 2013).  Ms. Howard appealed to the Eleventh Circuit, which affirmed on May 14, 2014.  *See Howard v. Soc. Sec. Admin., Comm'r*, 566 F. App'x 784, 787 (11th Cir. 2014).

On January 31, 2011, Ms. Howard filed a second application for a period of disability and DIB under Title II, although she did not apply for Supplemental Security Income ("SSI") under Title XIV at that time.  (Tr. at 473).  This second application, which was also denied, is the subject of the instant appeal.  Originally, Ms. Howard's application alleged an onset of disability on July, 1, 2005, the same disability onset date alleged in her prior application.  (Tr. at 473).  During a hearing before the ALJ on August 31, 2012, Ms. Howard amended her disability onset date to November 24, 2010, the day after the prior ALJ's denial of her first

application.  (*See* Tr. at 103-04).  On March 27, 2013, Ms. Howard protectively filed an application for SSI benefits under Title XVI, again alleging a disability onset date of November 24, 2010.  (*See* Tr. at 104; 463-72).  After a second hearing, the ALJ denied Ms. Howard's DIB and SSI applications.  (*See* Tr. at 103-141).  After the Appeals Council denied review, Ms. Howard filed the instant appeal.  (Tr. at 1-7).

Ms. Howard was born in 1965; she has a less-than-ninth-grade education, and her past work experience includes sewing machine operator, presser, and grinder.  (Tr. at 194, 223, 473, 477-78, 500-05).  Ms. Howard alleges she became unable to work due to pain, swelling of her joints, anxiety, mood swings, and arthritis.  (Tr. at 477).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is performing substantial gainful activity ("SGA").  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in SGA, he or she is not disabled and the evaluation stops.  *Id.*  If the claimant is not engaged in SGA, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and

must meet durational requirements before a claimant will be found disabled.  *Id.*
The decision depends on the medical evidence in the record.  *See Hart v. Finch,*
440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe,
the analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise,
the analysis continues to step three, at which the Commissioner determines
whether the claimant's impairments meet the severity of an impairment listed in 20
C.F.R. Part 404, Subpart P, Appendix 1.   20 C.F.R. §§ 404.1520(a)(4)(iii),
416.920(a)(4)(iii).  If the impairments fall within this category, the claimant will be
found disabled without further consideration.  *Id.*  If the impairments do not fall
within the listings, the Commissioner determines the claimant's residual functional
capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).

     At step four the Commissioner determines whether the impairments prevent
the claimant from returning to past relevant work.    20 C.F.R. §§
404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing
past relevant work, he or she is not disabled and the evaluation stops.  *Id.*  If the
claimant cannot perform past relevant work, the analysis proceeds to the fifth step,
at which the Commissioner considers the claimant's RFC, as well as the claimant's
age, education, and past work experience, to determine whether he or she can
perform other work.  *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the
claimant can do other work, he or she is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found Ms. Howard had not engaged in SGA since November 24, 2010. (Tr. at 107). At step two, the ALJ found Ms. Howard suffered from the following severe impairments: (1) borderline intellectual functioning; (2) generalized anxiety disorder; (3) obesity treated with gastric bypass; and (4) mild degenerative joint disease/arthritis in combination with obesity. (Tr. at 107). At step three, the ALJ found Ms. Howard did not have an impairment or combination of impairments meeting one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 111).

Before proceeding to step four, the ALJ determined Ms. Howard had the RFC to perform a "*reduced* range of light work." (Tr. at 115) (emphasis in original). Specifically, the ALJ found Ms. Howard was limited to: (1) simple, routine work; (2) work with a sit/stand option allowing her to change position at least every thirty minutes; (3) occasional stooping and kneeling; and (4) never climbing ladders, ropes, or scaffolds. (Tr. at 115). The ALJ further noted Ms. Howard should avoid concentrated exposure to extreme cold and vibration and all exposure to hazardous conditions. (Tr. at 115). The ALJ noted Ms. Howard was able to interact with people occasionally, should be allowed to be absent from work two days each month, and would be better suited for work that does not require reading instructions. (Tr. at 115).

At step four, the ALJ found Ms. Howard was unable to perform past relevant work. (Tr. at 139). At step five, the ALJ took testimony from a Vocational Expert and concluded that there were several jobs Ms. Howard could perform, including cashier, assembly, and surveillance system monitor. (Tr. at 141). The ALJ concluded her decision by finding Ms. Howard was not disabled. (Tr. at 141).

## II.    STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining: (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner; and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).   Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence.   *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).   Moreover, failure to apply the correct legal standards is grounds for reversal.   *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   DISCUSSION

Before addressing the merits of Ms. Howard's appeal, the undersigned will first address her motion to deem the prior claim as reopened.

### A.   <u>Motion to Deem Claim as Reopened</u>

A prior claim may be reopened: (1) within twelve months of the initial determination for any reason; (2) within four years with good cause; or (3) at any time, depending on the reason for reopening.   20 C.F.R. § 404.988.   Because the

twelve-month deadline has passed, this case falls into 20 C.F.R. § 404.988(b): within four years of the initial determination with good cause. "Good cause" includes new and material evidence, clerical errors in the computation of benefits, and clear error in the way the evidence was considered in making the determination. 20 C.F.R. § 404.989. Ordinarily, a court lacks jurisdiction to review the Commissioner's refusal to reopen a claim. *Cash v. Barnhart*, 327 F.3d 1252, 1256 (11th Cir. 2003) (citing *Califano v. Sanders*, 430 U.S. 99, 107-09 (1977)). Where a district judge deems a prior claim to be reopened, the court considers the Commissioner's denial in light of evidence presented in the prior claim "to the extent it has been reopened." *Coheley v. Colvin*, No. 15-782-CLS, 2016 WL 866931 at *3 (N.D. Ala. Mar. 7, 2016) (quoting *Wolfe v. Chater,* 86 F.3d 1072, 1079 (11th Cir. 1996).

As noted by another judge sitting in this district:

> A *de facto* reopening of a final decision by the SSA occurs if the decision "is reconsidered on the merits to any extent and at any administrative level." *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (citing *Cherry v. Heckler*, 760 F.2d 1186, 1189 (11th Cir. 1985) (finding that an ALJ's determination that the ALJs who adjudicated the claimant's two preceding disability claims had mischaracterized the claimant's educational level as 'limited' when it was actually 'marginal' was a reconsideration of the merits of the prior decisions with regards to the claimant's educational level); *see also Jones v. Barnhart,* 518 F. Supp. 2d 1327, 1337 (N.D. Ala. 2007) (finding that an ALJ's reevaluation of a claimant's literacy when the ALJ who adjudicated the claimant's previous disability claim had concluded the claimant was literate was a reconsideration of the issue of the claimant's literacy on the merits). At least one court has noted that

> "[w]hile Eleventh Circuit opinions have used broad language stating that jurisdiction exists if a case is 'reconsidered on the merits to any extent,' this exception to the rule set forth in *Califano* has not been applied broadly." *Johns v. Apfel,* No. CIV A 99–W–1404–N, 2000 WL 33287443, at *2 (M.D. Ala. Dec. 7, 2000) (quoting *Macon v. Sullivan,* 929 F.2d 1524, 1529 (11th Cir.1991).

*Sawyers v. Colvin,* No. 12-3610-AKK, 2014 WL 588019 at *5 (N.D. Ala. Feb 14, 2014). In *Sawyers,* the plaintiff contended his prior claim had been *de facto* reopened where the Appeals Council relied on evidence submitted in a prior application to find the plaintiff was not mentally disabled. However, because the Appeals Council also relied on other evidence to assess the plaintiff's mental impairment, the district court found a *de facto* reopening of the prior claim had not occurred. *Id.* at *6.

While some judges sitting in this district have interpreted *Wolfe* as requiring reopening unless the ALJ's evaluation of evidence in a prior claim was limited to a determination of whether *res judicata* applied, *see Coheley*, 2016 WL 866931 at *3, others courts—including courts sitting in this district—have held that the "regulations clearly contemplate that an ALJ may consider, to some extent, the evidence presented in a previous application without reopening that previous application." *Johns v. Apfel*, No. 99-1404, 2000 WL 33287443, at * 3 (M.D. Ala. Dec. 7, 2000); *see Sawyers*, 2014 WL 588019 at *5-6. Indeed, the Eleventh Circuit has noted that the Commissioner "must be allowed some leeway to evaluate the proffered evidence to determine whether to reopen the case." *Hall v. Bowen*,

840 F.2d 777, 778 (11th Cir. 1987).  Additionally, the Supreme Court has found there was no jurisdiction to review the Commissioner's denial of an implicit request to reopen, despite the fact that the ALJ reviewed a prior application and noted that he found "no errors on the face of the evidence." *Califano*, 430 U.S. at 103.

Here, Ms. Howard did not request the ALJ to reopen the prior claim.  In evaluating whether Ms. Howard implicitly requested reopening, the ALJ noted that the prior ALJ's November 23, 2010 decision became the final decision of the Commissioner following its affirmance on appeal.  (Tr. at 104).  Accordingly, the ALJ specifically noted the relevant periods were: (1) for the DIB claim, from the alleged onset date of November 24, 2010, through December 31, 2010—Ms. Howard's date last insured; and (2) for the SSI claim, from March 27, 2013—the date of Ms. Howard's SSI application—through the date of the ALJ's decision. (Tr. at 105).  Given the six-week period between the alleged onset of disability and Ms. Howard's date last insured, the ALJ explained she reviewed the record in the prior claim to determine if Ms. Howard's disability status had changed during this short timeframe.  (Tr. at 104).  The ALJ explicitly stated that any references to evidence presented in the prior claim were "for historical purposes only."  (Tr. at 105).  The ALJ also explained that, as a part of this process, she considered new evidence submitted to the Appeals Council in the prior claim which was pertinent

to the period of disability alleged in the instant application.  (Tr. at 104).  Finally, the ALJ noted that Ms. Howard's amendment of her disability onset date to November 24, 2010, "removed any issue of an implied request to reopen."  (Tr. at 104).

All of the evidence from the prior claim Ms. Howard alleges the ALJ improperly considered consisted of medical records created after the prior ALJ's decision in the prior application and during the claimed period of disability at issue in the second application—post-November 23, 2010.  Ms. Howard specifically cites the ALJ's consideration of: (1) a pain assessment created on February 3, 2011, by Dr. Hugh Maddox—Ms. Howard's treating physician (*see* Doc. 13 at 2); (2) the evaluation of Dr. David Wilson, created in January 2011 (*see* Doc. 13 at 3; Tr. at 112); and (3) the evaluation of Dr. Jane Teschner, created on February 7, 2011 (*see* Doc. 13 at 3-4).  Obviously, all of these medical records were created after the prior decision and after the alleged onset of disability in the instant application.  Furthermore, review of Ms. Howard's appeal concerning her prior application reveals that the records she identifies here were submitted to the Appeals Council after the ALJ's decision in the prior application.  *Howard*, 2013 WL 245617 at *3.  The Appeals Council in the prior application rejected these records because they were created after the ALJ's November 23, 2010 decision.  *Id.*  Accordingly, these

records were not considered—and were not included in the record—in the prior application. *Id.*

The circumstances presented here are factually distinct from the circumstances presented in any of the authority discussed above. However, in *Sawyer*, a judge in this district concluded the Appeals Council's consideration of, and reliance on, evidence in a prior claim did not reopen the claim because the Appeals Council also relied on other evidence. Here, neither the prior ALJ nor the Appeals Council considered any of the evidence forming the grounds for Ms. Howard's motion. Indeed, the evidence in question was not presented to the prior ALJ, and the Appeals Council rejected the evidence and did not include it in the record of the prior application. Following the guidance of *Sawyer*, it is difficult to conceive how a *de facto* reopening occurred here. Moreover, all of the records forming the basis of Ms. Howard's motion were relevant to whether Ms. Howard was disabled at some point after November 23, 2010.

For the foregoing reasons, the second ALJ's consideration of the opinions cited in Ms. Howard's brief did not reopen her prior claim. Accordingly, Ms. Howard's Motion to Deem Prior Claim as Reopened is **DENIED**.

## B.   **The Commissioner's Decision**

On appeal, Ms. Howard argues the ALJ erred by: (1) failing to give proper weight to the opinion of Dr. Maddox and by failing to state specific reasons for

rejecting his opinion; (2) substituting her own opinion for those of Dr. Jane Teschner and Dr. David Wilson and by giving improper weight to these opinions; and (3) relying on the denial of the prior petition without properly considering the evidence submitted to the Appeals Council after November 23, 2010—including the opinion of Dr. Maddox, records from Dr. Teschner, and an evaluation from Dr. Wilson. (Doc. 11 at 3). Each argument is addressed in turn.

### 1.   Dr. Maddox's Opinion

The opinion of a claimant's treating physician must be given considerable weight by the Commissioner absent a showing of good cause to the contrary. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir.1997). The reasons for giving little weight to the opinion of a treating physician must be supported by substantial evidence. *Marbury v. Sullivan,* 957 F.2d 837, 841 (11th Cir.1992). The Eleventh Circuit has found good cause to give less weight to the opinion of a treating physician "when the: (1) treating physician's opinion is not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart,* 357 F.3d 1232, 1240-41 (11th Cir. 2004). The ALJ must clearly articulate the reasons for rejecting the treating physician's opinion. *Id.* at 1241.

Moreover, while physicians' opinions about a claimant's abilities and restrictions constitute relevant evidence, such opinions are not determinative because the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-5p. Opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case, i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d); *see Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986). The court considers a doctor's evaluations of a plaintiff's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative of the claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1546(c).

Here, Ms. Howard argues the ALJ failed to give proper weight to the opinion of Dr. Maddox, her treating physician. Ms. Howard further contends the ALJ failed to specifically state her reasons for discounting Dr. Maddox's opinion. The opinion at issue is a multiple-choice questionnaire completed by Dr. Maddox on February 3, 2011. (Tr. at 961-62). Dr. Maddox circled answers indicating: (1) Ms. Howard experienced pain to an extent that would "be distracting to adequate

performance of daily activities or work;" (2) increased physical activity would cause Ms. Howard to suffer from pain that would require bed rest and/or medication; (3) the side effects of Ms. Howard's pain medications would "limit the effectiveness of work duties;" (4) Ms. Howard would continue to experience pain in the future; and (5) pain treatment had been "quite successful[]."  Dr. Maddox also wrote the following comment on the form: "No treatments done at this time will last longer than [six] months.  Everything will have to be retreated to maintain pain."  (Tr. at 961-62).

The ALJ attributed little weight to Dr. Maddox's opinion, stating it was "merely conclusory and unsubstantiated by clinical or laboratory findings."  (Tr. at 125).  The ALJ noted this lack of evidentiary support stood in contrast to the opinions of Dr. Calvin Johns and Dr. Robert H. Heilpern, which were supported by clinical data.  (Tr. at 125).  Specifically, Dr. Johns appeared at the hearing and testified as an independent medical expert.  The ALJ noted that Dr. Johns reviewed the record and found that it "did not support the level of pain complained of by the claimant […]."  (Tr. at 124).  The ALJ also relied on the Physical Residual Functional Capacity Assessment completed by Dr. Heilpern on March 28, 2011, which concluded Ms. Howard was capable of performing limited light work.  (Tr. at 124).

Based on the foregoing authority, the ALJ did not err in assigning little weight to Dr. Maddox's answers to the pain questionnaire. As an initial matter, to the extent Dr. Maddox's opinion purports to establish Ms. Howard's limitations, that issue is reserved for the Commissioner. Additionally, the ALJ expressed specific reasons for ascribing little weight to Dr. Maddox's answers to the pain questionnaire, finding they were conclusory and contradicted by objective medical evidence in the record. Accordingly, the ALJ's decision to discount Dr. Maddox's opinion is supported by substantial evidence.

### 2.    The Opinions of Dr. Teschner and Dr. Wilson

"An ALJ 'may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.'" *Williams v. Barnhart*, 140 F. App'x 932, 934 (11th Cir. 2005) (quoting *Marbury*, 957 F.2d at 840-41). However, the Eleventh Circuit has also noted "an ALJ 'is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Id*. (quoting *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)). Additionally, the opinions of one-time examiners are not entitled to any particular weight or deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Here, Ms. Howard argues the ALJ arbitrarily substituted her own opinion for those of Dr. Teschner and Dr. Wilson. (Doc. 11 at 3, 31-36).

Dr. Teschner examined Ms. Howard on February 7, 2011.  Based on this one-time examination, Dr. Teschner diagnosed Ms. Howard with twenty impairments and concluded she would be unable to sit for more than thirty minutes at a time or for more than one hour in an eight-hour day.  (Tr. at 847-57).  If Dr. Teschner's opinion were controlling, Ms. Howard would be unable to sustain employment.  (*See* Doc. 11 at 34; Tr. at 182-84).  The ALJ rejected Dr. Teschner's opinion in its entirety.  (Tr. at 129).

As noted above, Dr. Teshner's opinion, based on his one-time examination of Ms. Howard, is not entitled to any particular weight.  However, even under the more stringent requirements applicable to treating physicians' opinions, the ALJ stated sufficient reasons for discounting Dr. Teschner's opinion, finding it was internally inconsistent and contradicted by other evidence.

First, the ALJ noted that Dr. Teschner diagnosed Ms. Howard with: (1) three conditions, including carpal tunnel syndrome, which had been ruled out by previous treating physicians; (2) multiple conditions Ms. Howard complained of more than eleven years earlier; (3) several conditions the ALJ found to be minimal impairments; and (4) one condition which had since been repaired by arthroscopic surgery.  (Tr. at 128).  Next, the ALJ noted that the physical limitations imposed by Dr. Teschner were inconsistent with Ms. Howard's own admitted abilities, including that she could: (1) carry her grandchild; (2) shop and cook; (3) load a

dishwasher; (4) care for and groom her dog; (5) exercise by walking for forty-five minutes twice a week; and (6) walk to her mother's house "nearly every day."  (Tr. at 128).

Additionally, the ALJ found that Dr. Teschner did not state the medical basis for the exertional limitations she imposed and, further, that the limitations were not supported by her examination findings.  In particular, the ALJ noted the following inconsistencies between Dr. Teschner's findings and her conclusions: (1) Ms. Howard had full strength in her upper body, grip, and pinch, but could not lift or carry more than five pounds; (2) Ms. Howard had full range of motion in her shoulder, elbow, wrist, and forearm, but could never use her arms and hands to push and/or pull; and (3) Ms. Howard had four-out-of-five lower extremity strength, no atrophy, full range of motion in her lower extremities, only mildly reduced lumbar range of motion, and no joint crepitus, but nonetheless could never bend, squat, crawl, climb, or reach.  (Tr. at 128).   Further, the ALJ noted Dr. Johns, the independent medical expert, also examined the medical evidence presented by Dr. Teschner but reached contrary conclusions as to several of Dr. Teschner's diagnoses.  (Tr. at 126-27).

Accordingly, the ALJ did not err in rejecting the opinion of Dr. Teschner, who examined Ms. Howard on one occasion.  Moreover, the ALJ did not merely substitute her opinion for Dr. Teschner's.  Instead, the ALJ properly rejected Dr.

Teschner's opinion.  *See Williams*, 140 F. App'x at 934.  Moreover, substantial evidence supports the ALJ's decision on this point.

Dr. Wilson evaluated Ms. Howard's cognitive abilities on July 26, 2011. (Tr. at 858-59).  Dr. Wilson noted that Ms. Howard was "**very slow** in her approach and responses to the test items."  (Tr. at 858) (emphasis in original).  Dr. Wilson concluded Ms. Howard had a full scale I.Q. score of 67, placing her in the "Mildly Retarded Range."  (Tr. at 858-59).[1]  Dr. Wilson noted Ms. Howard's verbal skills were in the borderline range but found she had poor nonverbal skills, as well as very poor working memory, processing speed, and reading skills.  (Tr. at 859).  Dr. Wilson opined Ms. Howard's intellectual disability "would cause her a problem in many job settings" and concluded that, in conjunction with her physical disabilities, "she likely would not be able to maintain employment in any type of job."  (Tr. at 859).

During the hearing, the ALJ utilized Dr. Doug McKeown, a clinical psychologist, to act as an independent medical expert.  (Tr. at 111-15, 129-30). Dr. McKeown testified that the record did not support a finding of mental retardation, instead concluding Ms. Howard's treatment for anxiety indicated that evaluation for organic mental impairment was more appropriate.  (*See* Tr. at 112). Dr. McKeown noted that Ms. Howard had poor grades during her last two years

[1] "Mentally retarded" was the term used by Dr. Wilson.  As of Aug. 1, 2013, the terminology was changed to "intellectually disabled."  *See* 78 Fed. Reg. 46499-01.

and dropped out of the ninth grade but found that her school records did not support a finding of mental retardation. (Tr. at 112). Dr. McKeown testified Ms. Howard's verbal and comprehension scores, which were on the lower end of average, supported a finding of borderline functioning. (Tr. at 112). Dr. MeKeown also testified that a finding of mental retardation under the Listings required the intellectual difficulties to manifest prior to age twenty-two, which was absent in this case. (Tr. at 112). Dr. McKeown noted that Ms. Howard had a driver's license and opined that her activities indicated she had good adaptive functioning, which did not support a finding of mental retardation. (Tr. at 112).

The ALJ agreed with Dr. McKeown's rejection of Dr. Wilson's opinion. In doing so, the ALJ noted Dr. Wilson was the only medical source opining Ms. Howard was mentally retarded. (Tr. at 112). The ALJ also noted Dr. Wilson's opinion conflicted with Ms. Howard's work history, which included semi-skilled work requiring her to maintain production and quality control logs. (Tr. at 112-13). The ALJ also found Dr. Wilson's opinion conflicted with Ms. Howard's self-reported activities of navigating the community, paying the family's bills, shopping, cooking, reading, and lifelong independence. (Tr. at 113). The ALJ concluded Dr. Wilson's opinion was not supported by the record.

Accordingly, the ALJ did not err in rejecting the opinion of Dr. Wilson, who examined Ms. Howard on one occasion. Moreover, the ALJ did not merely

substitute her opinion for Dr. Wilson's.  Instead, the ALJ properly rejected Dr. Wilson's opinion.  *See Williams*, 140 F. App'x at 934.  Moreover, substantial evidence supports the ALJ's decision on this point.

### 3.     The Prior Denial of Benefits

Ms. Howard's third and final argument is the ALJ improperly relied on the prior denial of benefits without considering the evidence presented to the Appeals Council following the prior denial. (Doc. 11 at 36-37).  Contrary to Ms. Howard's contention, the ALJ specifically discussed much of the evidence submitted after the prior ALJ's November 23, 2010 denial of benefits.  (*See generally* Tr. at 113, 119-22, 126-27, 130-33).  Accordingly, it appears the thrust of Ms. Howard's argument may be that the ALJ did not properly consider the evidence submitted to the Appeals Council in the prior denial.  However, Ms. Howard makes no substantive argument in this regard, instead merely listing records that were submitted to the Appels Council in the prior denial.  (Doc. 11 at 37).

Accordingly, to the extent Ms. Howard contends the ALJ did not consider relevant evidence, this contention is without merit.  To the extent that Ms. Howard may contend the ALJ considered the evidence but reached the wrong conclusion, this argument is entirely conclusory and is rejected on that basis.  Moreover, the court's review of the ALJ's evaluation reveals that it is supported by substantial evidence and in accord with the governing law.

**V. CONCLUSION**

Upon review of the administrative record and considering all of Ms. Howard's arguments, the court finds the Commissioner's decision is supported by substantial evidence and in accord with applicable law.   Accordingly, the Commissioner's decision is due to be affirmed.    A   separate   order   will   be entered.

**DONE** this 30th day of September, 2016.

_____
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE